**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Caley Keene, individually, and on behalf of those similarly situated, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Demand for Jury Trial** |
| PACHA SOAP CO., | |
| Defendant. | |

Plaintiff Caley Keene brings this action on behalf of herself and all others similarly situated against PACHA SOAP CO. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

**NATURE OF THE ACTION**

1.     This case arises from Defendant's deceptive and misleading practices with respect to its marketing and sale of its personal care products (the "Products" or "Product").[1]

2.     Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign focused on consumers seeking personal care products that contain sea salt, mint, and eucalyptus.

3.     Defendant's marketing efforts stress the purported composition of their Products.

4.     Notably, Defendant engages in a deceptive marketing campaign to convince consumers that the Products contain sea salt, mint, and eucalyptus.

5.     For example, Defendant prominently emphasizes these ingredients on the front-facing label of its Products:

---

[1] The Products include the items identified in Section A of the Facts.

– 1 –

GOOD GUSTAFSON AUMAIS LLP

**GOOD GUSTAFSON AUMAIS LLP**



6.      However, this is false, misleading, and deceptive because Defendant's Products do not contain any of these ingredients.

7.      Reasonable consumers purchased the Products believing, among other things, that they were accurately represented. Specifically, reasonable consumers believed that the Products contained accurate label information and representations and that the Products contained the prominently featured ingredients. Reasonable consumers would not have purchased the Products if they had known about the misrepresentations and omissions, or would have purchased them on different terms.

8.      Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent a Class. Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from its unlawful and/or deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive

CLASS ACTION COMPLAINT

relief to stop Defendant's unlawful conduct in the labeling and marketing of the Products.

9.     Defendant's conduct violated and continues to violate, *inter alia*, the consumer protection statutes of California. Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the California consumer market and distributes the Products to many locations within the state, where the Products are purchased by hundreds of consumers every day.

11.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed Plaintiff's class and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Classes (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

12.     Venue is proper in this District under 28 U.S.C. § 1391. Plaintiff's purchases of Defendant's Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information

– 3 –

regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District.

## DIVISIONAL ASSIGNMENT

13. Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in Alameda County, and this action should be assigned to the Oakland Division.

## PARTIES

14. Plaintiff Caley Keene is a citizen of California who purchased the Products during the Class Period in California.

    a. In the preceding two years, Plaintiff has purchased Defendant's Product from a variety of retailers in Alameda County. She has purchased the Hand Soap marketed as containing sea salt, eucalyptus, and mint.

    b. Prior to her purchases, Plaintiff reviewed the accompanying labels and disclosures, including Defendant's representation that the Product contained sea salt, mint, and eucalyptus. Plaintiff relied on the claim in deciding to purchase the Product. As such, the claim was part of the basis of the bargain, in that Plaintiff would not have purchased the Product on the same terms had she known that the claim was not true concerning the characteristics of the Product. Accordingly, Plaintiff did not receive the benefit of her bargain. In making her purchase, Plaintiff paid a price premium due to Defendant's false and misleading claim.

    c. Plaintiff purchased the Products for personal use. When Plaintiff saw Defendant's misrepresentations prior to and at the time of purchase, she relied on Defendant's prominent representations and claims about the Products. Specifically, that it contained sea salt, eucalyptus, and mint.

– 4 –

Defendant emphasizes these representations in the marketing and on the labeling of the Product.

d.  Plaintiff understood these representations to mean that the Product contained sea salt, mint, and eucalyptus. Had Plaintiff known the truth – that it failed to conform to those representations – Plaintiff would not have purchased the Product at a premium price.

e.  Plaintiff brings the claims below seeking damages, actual and statutory, as well as injunctive relief.

15.  Defendant PACHA SOAP CO. is a corporation organized under the laws of Delaware with its principal place of business in Hastings, Nebraska.

a.  Defendant produces, markets and distributes the Products in retail stores across the United States including stores physically located in the State of California and this District.

16.  Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

17.  Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## FACTS

**A.  Defendant Makes, Markets, and Sells the Product to Consumers.**

– 5 –

18.    Defendant manufactures, labels, distributes, advertises, and sells the Products.

19.    Defendant markets and labels the Product with the representations and omissions as described herein. Specifically, the Product's label represents that the Product contains sea salt, mint, and eucalyptus as primary ingredients.

20.    The Products:



21.    In the above examples, "SEA SALT," "SWEET MINT," and "EUCALYPTUS" are emphasized on the Principal Display Panel.

22.    Additionally, on the majority of the Products, Defendant includes the image of a plant leaf stating "XX% NATURALLY DERIVED."

23.    In this way, Defendant's carefully designed labels and packaging, including the placement of the claims, perpetuate the false notion that the Product contains these three ingredients. Defendant intends that consumers viewing the

GOOD GUSTAFSON AUMAIS LLP

Product's labels or packaging will read the claim, understand the representations, and rely on the representations.

24.    This represents to consumers that the Products contain these specific ingredients.

25.    Defendant also further misrepresents that the Products contain these ingredients in online marketing.







26.    From the label to marketing across multiple platforms, Defendant represents to consumers that ingredients matter, and its Products contain the ingredients emphasized on the Products' front label.

**B.  The Products Do Not Contain Any of the Ingredients.**

27.    Defendant's Products do not contain sea salt.

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP

28.    Defendant's Products do not contain mint.

29.    Defendant's Products do not contain eucalyptus.

30.    Instead of containing these specific ingredients, the Products contain synthetic ingredients like fragrance and phenoxyethanol.

a.    **Fragrance** is a synthetic ingredient that includes unknown and unregulated chemical compounds.

b.    **Phenoxyethanol** is a synthetic substance associated with depressing the central nervous system, vomiting, and diarrhea.[2] This synthetic chemical concerned the FDA, and the agency warned consumers against using on nursing infants because it "can depress the central nervous system" and "may cause vomiting and diarrhea, which can lead to dehydration in infants."[3] Concern for the use of this synthetic ingredient is not restricted to the United States, and after concerns were raised by the European Commission's Scientific Committee on Consumer Safety, France prohibited the labeling and marketing of products containing Phenoxyethanol for use on children that are three years old and younger.[4]

---

[2] 21 C.F.R. §172.515 *and FDA Consumer Update: Contaminated Nipple Cream*, (May 2008), https://web.archive.org/web/20140712202507/https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm049301.htm.

[3] U.S. Food and Drug Administration, For Consumers, *Contaminated Nipple Cream*, https://web.archive.org/web/20140712202507/https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm049301.htm (last visited Mar. 17, 2021).

[4] Agence Nationale de Sécurité du Médicament et des Produits de Santé, Decision of 13 Mars 2019, *available at* https://www.ansm.sante.fr/content/download/158253/2075101/version/1/file/DPS_Phenoxyethanol-200319.pdf.

– 9 –

<div style="margin-left:left;">GOOD GUSTAFSON AUMAIS LLP</div>

31.   Unlike Defendant, competitors accurately represent their ingredients on the front labels.

 

**C.  Reasonable Consumers Relied on Defendant's Misrepresentations.**

32.   Consumers are drawn to products that represent that they have these specific ingredients.

33.   This increased demand is driven by beliefs that the products are higher quality and provide better performance than products without these ingredients.

34.   The use of sea salt in personal care products originates in ancient times.[5]

_____

[5] Dai D, Ma X, Yan X, Bao X, *The Biological Role of Dead Sea Water in Skin Health: A*

– 10 –

35.   Sea salt is desired by consumers because of actual and perceived benefits.

   a.   Sea salt "improve[s] skin barrier function, enhance[s] stratum corneum hydration, and reduce[s] skin roughness and inflammation."[6]

   b.   Numerous studies show improvements to "functions of skin moisturization, anti-inflammation, skin barrier repair, and anti-pollution."[7]

   c.   "Magnesium, calcium, and potassium are all skin-friendly minerals that can be found in sea salt. These minerals are great benefits of salt water since they help combat acne-causing bacteria and skin infections, as well as speed up the healing process."[8]

   d.   "Sea salt is different from table salt in that it includes additional rich minerals like magnesium, calcium and potassium. These are the same minerals in our bodies that play an important role in our skin's health function and cellular communication."[9]

   e.   "Sea salt can help absorb dirt, makeup and excess oil. It deeply cleans your pores and acts as an anti-inflammatory. Incorporating a sea salt soap into your daily face care regimen can help fight the bacteria that

---

*Review*, COSMETICS (2023), 10(1):21, https://doi.org/10.3390/cosmetics10010021.

[6] Proksch E, Nissen HP, Bremgartner M, Urquhart C, *Bathing in a magnesium-rich Dead Sea salt solution improves skin barrier function, enhances skin hydration, and reduces inflammation in atopic dry skin*, INT J DERMATOL. (2005), 44(2):151-157.

[7] Dai D, Ma X, Yan X, Bao X, *The Biological Role of Dead Sea Water in Skin Health: A Review*, COSMETICS (2023), 10(1):21 ("Sea salt... could greatly improve skin hydration, roughness, and reduce skin redness.").

[8] DCSI, *Benefits of Salt Water for Skin*, https://www.mydcsi.com/2020/02/25/benefits-salt-water-for-skin/.

[9] *The Magic of Sea Salt for Your Skin*, https://www.naplessoap.com/blogs/blog/sea-salt-in-skin-care.

– 11 –

GOOD GUSTAFSON AUMAIS LLP

causes acne and breakouts. With regular use over time, sea salt can help normalize and balance the skin's oil production."[10]

f. "[It] can help promote blood circulation when used on the legs, arms, feet, shoulders and back. Soaking in a warm bath with sea salt crystals can help ease muscle soreness and body aches."[11]

g. "Sea salt can naturally cleanse the skin and help rebalance oil production. It also contains antibacterial properties to help discourage the growth of bacteria that cause breakouts."[12]

36. Eucalyptus is desired by consumers because of actual and perceived benefits.

a. Consumers believe that eucalyptus can aid by calming acne-prone skin, providing anti-inflammatory cleansing and refreshing skin, while also hydrating dry and cracked skin.

37. Mint is desired by consumers because of actual and perceived benefits.[13]

a. "Throughout history, mint has been recognized for its therapeutic properties, particularly in alleviating skin ailments and enhancing complexion. In an era increasingly focused on natural remedies and holistic approaches to skincare, mint leaves stand out for their rich nutritional profile and potent medicinal compounds."[14]

---

[10] *Id.*

[11] *Id.*

[12] *Why Salty Skin is a Good Thing: The Benefits of Sea Salt in Skincare,* https://www.bendsoap.com/blogs/sudsy-scoop/why-salty-skin-is-a-good-thing-the-benefits-of-sea-salt-in-skincare.

[13] Oncquest Labs, *Mint Leaf Benefits for Skin,* https://oncquestlabs.com/blog/mint-leaf-benefits-for-skin/.

[14] *Id.*

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP

b. Mint provides antioxidant protection.

    i. Mint leaves provide robust antioxidant protection for the skin due to their high content of vitamins C and E, as well as flavonoids. These antioxidants help neutralize free radicals that contribute to skin aging, such as fine lines, wrinkles, and age spots. By combating oxidative stress, mint leaves support skin health by promoting a more youthful appearance and maintaining skin elasticity. Regular use of mint-infused skincare products or homemade treatments can effectively shield the skin from environmental damage while rejuvenating its natural radiance and resilience.

c. Mint has anti-inflammatory properties.

    i. "Mint leaves are prized for their potent anti-inflammatory properties, primarily attributed to menthol and rosmarinic acid. These compounds soothe and calm irritated skin by reducing redness, swelling, and discomfort. This makes mint an effective natural remedy for conditions like acne, eczema, and sunburn. By alleviating inflammation, mint leaves promote skin healing and overall skin health, enhancing comfort and appearance. Whether applied topically or consumed as part of skincare routines, mint leaves offer a gentle yet powerful solution to mitigate skin inflammation and maintain a balanced complexion."[15]

---

[15] *Id.*

– 13 –

d.  Mint provides Antimicrobial Action.

    i.  "Mint leaves exhibit strong antimicrobial action, which makes them effective in combating various bacteria, fungi, and viruses on the skin's surface. This antimicrobial activity is primarily due to the presence of compounds like menthol and thymol. By inhibiting the growth of microorganisms, mint leaves help prevent skin infections and promote overall skin health. This natural antimicrobial property also makes mint an excellent choice for maintaining cleanliness and reducing the risk of acne breakouts and other skin irritations. Regular use of mint-infused skincare products or homemade remedies can support clear, healthy skin by keeping harmful microbes at bay."[16]

e.  Mint assists with skin cleansing.

    i.  "Mint leaves are renowned for their effective skin cleansing properties, helping to purify and refresh the skin naturally. The natural oils and menthol in mint leaves act as gentle yet effective cleansers, helping to unclog pores and remove dirt, oil, and impurities from the skin's surface. This cleansing action not only promotes clearer skin but also helps prevent acne and breakouts by keeping pores free of debris. Mint leaves can be used in various skincare routines, such as homemade facial masks or cleansers, to

---

[16] *Id.*

– 14 –

achieve a deeply cleansed and revitalized complexion without stripping the skin of its natural moisture."[17]

f. Mint assists with skin toning.

    i. Mint leaves are excellent natural toners for the skin due to their astringent properties. The menthol in mint helps tighten the skin by constricting the pores, which reduces excess oil and makes the skin appear smoother and more even in texture. This toning effect also helps to firm and refresh the skin, giving it a youthful appearance. Mint leaves can be used as a simple toner by steeping them in hot water, allowing the mixture to cool, and then applying it to the face with a cotton ball. Regular use of mint as a toner can help maintain skin elasticity and improve overall complexion.[18]

g. Mint assists with skin brightening.

    i. "Mint leaves contribute to skin brightening through their ability to improve blood circulation and promote cell renewal. Rich in antioxidants like vitamin C, mint helps combat oxidative stress and reduce the appearance of dark spots and pigmentation. The cooling sensation of menthol in mint leaves also refreshes and revitalizes the skin, imparting a radiant glow. Regular use of mint-infused skincare products or homemade treatments can

---

[17] *Id.*
[18] *Id.*

– 15 –

GOOD GUSTAFSON AUMAIS LLP

effectively brighten the complexion, leaving the skin looking more luminous, even-toned, and rejuvenated."[19]

h. Mint provides moisturizing and hydrating effects.

i. "Mint leaves provide effective moisturization and hydration for the skin without clogging pores, making them suitable for various skin types, including oily and combination skin. The natural oils present in mint leaves help to lock in moisture and maintain skin's natural barrier function. Additionally, mint leaves have cooling properties that soothe and refresh the skin, providing relief from dryness and irritation. Whether used in DIY face masks, toners, or moisturizers, mint leaves offer a refreshing and hydrating experience, leaving the skin feeling soft, supple, and revitalized. Regular use promotes balanced hydration and healthy skin appearance."[20]

i. Mint has healing properties.

i. "Mint leaves possess notable healing properties that can benefit the skin in various ways. The natural antioxidants and anti-inflammatory compounds in mint leaves help to soothe and heal minor cuts, wounds, and insect bites. Their cooling effect provides relief from itching and irritation, promoting faster healing. Mint leaves also have antiseptic properties that can cleanse and protect the skin from infections. Whether applied topically as a poultice or

---

[19] *Id.*
[20] *Id.*

CLASS ACTION COMPLAINT

infused in skincare products, mint leaves offer a gentle yet effective solution for promoting skin healing and maintaining overall skin health. Regular use can aid in keeping the skin clear, smooth, and resilient against environmental stressors."[21]

j.  Mint provides a refreshing sensation.

i.  "Mint leaves provide a refreshing sensation for the skin, thanks to their high menthol content. When applied or used in skincare products, mint leaves impart a cooling and invigorating effect that instantly revitalizes and rejuvenates the skin. This refreshing sensation not only feels pleasant but also helps to soothe and calm irritated skin, making mint leaves a popular choice for skincare routines, especially during hot weather or after prolonged sun exposure. Whether used as a facial mist, infused toner, or in DIY face masks, mint leaves offer a refreshing pick-me-up that leaves the skin feeling cool, refreshed, and energized. Incorporating mint leaves into skincare routines through DIY masks, toners, or topical applications can harness these benefits effectively, promoting healthier, clearer, and more radiant skin naturally."[22]

38.    Despite failing to use any of these ingredients, Defendant represented to consumers that the Products contain these three important ingredients.

---

[21] *Id.*
[22] *Id.*

– 17 –

39.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

40.    Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

41.    Defendant's illegal, deceptive conduct leads reasonable consumers to believe that the Products contain sea salt, mint, and eucalyptus.

42.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

## D. **Defendant's Deceptive Conduct Caused Plaintiff's and Class Members' Injuries**

43.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products represented as containing sea salt, mint, and eucalyptus over comparable products not so labeled and marketed.

44.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations, Defendant injured the Plaintiff and the Class Members in that they:

   a.    Paid a sum of money for Products that were not what Defendant represented;

   b.    Paid a premium price for Products that were not what Defendant represented;

– 18 –

c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

45.  Plaintiff and the Class Members paid for Products that contained sea salt, mint, and eucalyptus but received Products that did not contain any of these three ingredients. The products Plaintiff and the Class Members received were worth less than the products for which they paid.

46.  Based on Defendant's misleading and deceptive representations, Defendant were able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the misrepresentations.

47.  Plaintiff and the Class Members paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

48.  Defendant knew that consumers will pay more for a product marketed as containing sea salt, mint, and eucalyptus and intended to deceive Plaintiff and putative Class Members by labeling and marketing the Products as purportedly containing these three ingredients.

49.  Plaintiff and Class Members paid for the Products over and above comparable products that did not purport to contain sea salt, mint, and eucalyptus.

– 19 –

Given that Plaintiff and Class Members paid for the Products based on Defendant's misrepresentations that they contained sea salt, mint, and eucalyptus, Plaintiff and Class Members suffered an injury in the amount paid.

50.    Additionally, Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to contain sea salt, mint, and eucalyptus. Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they contained sea salt, mint, and eucalyptus. Plaintiff and Class Members suffered an injury in the amount of the premium paid.

## CLASS DEFINITIONS AND ALLEGATIONS

51.    Plaintiff, pursuant to Federal Rule of Civil Procedure 23, brings this action on behalf of the following classes (collectively, the "Class," "Classes," and "Class Members"):

a.  All persons who purchased Defendant's Products within the State of California and within the applicable statute of limitations period.

52.    Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

53.    The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, millions of units of the Products to Class Members.

CLASS ACTION COMPLAINT

54.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a.    whether Defendant misrepresented material facts concerning the Products on the label of every product;

b.    whether Defendant's conduct was unfair and/or deceptive;

c.    whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the Classes;

d.    whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

e.    whether Defendant breached express and implied warranties to Plaintiff and the Classes;

f.    whether Plaintiff and the Classes have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

55.    Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the Classes, purchased Defendant's Products bearing the representations that they contained sea salt, mint, and eucalyptus, and Plaintiff sustained damages from Defendant's wrongful conduct.

56.    Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the classes.

– 21 –

GOOD GUSTAFSON AUMAIS LLP

57.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

58.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

59.    The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

CLASS ACTION COMPLAINT

**COUNT I**
**Violation of California's Unfair Competition Law ("UCL"),**
**CAL. BUS. & PROF. CODE §§ 17200, et seq.**

60.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.    Plaintiff brings this Count individually and on behalf of the members of the Class.

62.    Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

63.    Defendant violated the "unlawful" prong of the UCL by violating California's Consumer Legal Remedies Acts ("CLRA")  and False Advertising Law ("FAL"), as alleged herein.

64.    Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

65.    Defendant violated the "fraudulent" prong of the UCL by misrepresenting that the Products contained sea salt, mint, and eucalyptus, when, in fact, they contained no sea salt, mint, or eucalyptus.

66.    Plaintiff and the Class Members lost money or property as a result of Defendant's UCL violations because: because: (a) they would not have purchased the Products on the same terms if they knew that the Products did not contain sea salt, mint, and eucalyptus; (b) they paid a substantial price premium compared to other

CLASS ACTION COMPLAINT

products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

67.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

68.    Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

69.    Because Plaintiff and the Class Members' claims under the "unfair" prong of the UCL sweep more broadly than their claims under the FAL, CLRA, or UCL's "fraudulent" prong, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of Defendant's challenged behavior.

## COUNT II
### Violation of The False Advertising Law ("FAL"),
### CAL. BUS. & PROF. CODE §§ 17500, *et seq.*

70.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.    Plaintiff brings this Count individually and on behalf of the members of the Class.

72.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance

– 24 –

or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

73. Defendant committed acts of false advertising, as defined by §§17500, *et seq.*, by misrepresenting that the Products contained sea salt, mint, and eucalyptus when they do not contain any of these ingredients.

74. Defendant knew or should have known through the exercise of reasonable care (i.e. pre-market testing) that its representations about the Products were untrue and misleading.

75. Defendant's actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.

76. Plaintiff and the Class Members lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products did not contain sea salt, mint, and eucalyptus; (b) they paid a substantial price premium compared to other cosmetic products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

77. Defendant profited from the sale of the falsely and deceptively advertised Products to unwary consumers.

78. As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

79. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the Class, seeks an order enjoining Defendant from continuing to engage

in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

80.    Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA, and restitution is not limited to returning to Plaintiff and Class Members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

<div style="text-align:center">

**COUNT III**
**Violation of The Consumer Legal Remedies Act ("CLRA"),**
**CAL. CIV. CODE §§ 1750, *et seq*.**

</div>

81.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82.    Plaintiff brings this Count individually and on behalf of the members of the Class.

83.    Plaintiff and the other members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

84.    At all times relevant hereto, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in Civil Code section 1761(a).

<div style="text-align:center">

– 26 –

CLASS ACTION COMPLAINT

</div>

85. Plaintiff, the other members of the Classes, and Defendant has engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

86. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

87. As alleged more fully above, Defendant has violated the CLRA by deceptively representing to Plaintiff and the other members of the Class that the Products contained sea salt, mint, and eucalyptus when the Products did not contain any sea salt, mint, or eucalyptus.

88. Defendant's representations and omissions violate the CLRA in at least the following respects:

    a. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold;

    b. In violation of Civil Code § 1770(a)(5), Defendant represented that the Products have characteristics, ingredients, uses, benefits, and quantities which they do not have;

    c. In violation of Civil Code § 1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade, which they are not;  and

    d. In violation of Civil Code § 1770(a)(9), Defendant advertised the Products with an intent not to sell the products as advertised.

GOOD GUSTAFSON AUMAIS LLP

CLASS ACTION COMPLAINT

89.     Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm. Plaintiff and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

90.     Defendant's actions as described herein were done with conscious disregard of Plaintiff's and California Class Members' rights and was wanton and malicious.

91.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still misrepresenting their Products and making material omissions.

92.     Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

**COUNT IV**
**Unjust Enrichment**

93.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

94.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against the Defendant.

95.     At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Class.

– 28 –

CLASS ACTION COMPLAINT

96.     Plaintiff and members of the Classes conferred upon Defendant nongratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

97.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

98.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

**RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and

– 29 –

Plaintiff's attorneys as Class Counsel to represent the members of the Class;

b.  For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

c.  For an order awarding, as appropriate, compensatory and monetary damages, statutory damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

d.  For an order requiring Defendant to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

e.  For prejudgment and postjudgment interest on all amounts awarded;

f.  For an order awarding punitive damages; and

For an order awarding attorneys' fees and expenses and costs of suit

### JURY TRIAL DEMAND

Plaintiff demands a jury trial on all causes of action so triable.


Dated: March 16, 2026

**Good Gustafson Aumais LLP**

/s/ J. Ryan Gustafson
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
cta@ggallp.com

*Counsel for Plaintiff and the Proposed Class*

– 30 –